UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| THOMAS ARTHUR QUIRK, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | 1:01-cv-665-JDT-TAB |
| ) | |
| MITCH BLOCHER, et al., ) | |
| ) | |
| Defendants. ) | |

**Entry Discussing Motion for Summary Judgment**

For the reasons explained in this Entry, the defendants' motion for summary judgment must be **granted.**

**Background**

The parties in this action are plaintiff Thomas A. Quirk and Indiana State Police Troopers Mitch Blocher and Tim Denny. The claim against a third defendant, Deputy Joseph Hunt, has been dismissed. Quirk's claims arise from events occurring in Hancock County, Indiana during the early morning hours of March 17, 2001. His claims are that through his encounters with the defendants on that date the defendants violated his right under the Fourth Amendment to be free from unreasonable searches and seizures and that he was thereafter unlawfully detained in the Hancock County Jail for 25 months. His federal claims are asserted pursuant to 42 U.S.C. § 1983. He also asserts a claim directly under the Indiana Constitution.

The defendants seek resolution of Quirk's claims through the entry of summary judgment. *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005) ("Summary judgment is appropriate where the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'")(quoting Rule 56(c) of the *Federal Rules of Civil Procedure*). In evaluating a motion for summary judgment, a court must "construe all facts in a light most favorable to . . . the party opposing summary judgment, and . . . draw all reasonable inferences in his favor." *McGreal v. Ostrov,* 368 F.3d 657, 672 (7th Cir. 2004) (citation omitted).

Viewed in the fashion most favorable to Quirk as the non-movant, the evidentiary record in this case shows the following:

- On March 17, 2001, at approximately 1:23 a.m., Trooper Blocher observed that the semi-truck driven by Quirk had a malfunctioning headlight and stopped him on an entrance ramp to a rest stop on Interstate 70.

- Blocher asked several questions and ran a background check. The background check revealed that Quirk had three aliases, which Blocher found unusual. When Blocher asked Quirk about the aliases, he replied he had problems with his license and therefore used aliases.

- Next, Blocher examined the bill of lading and found it unusual because it was handwritten, unlike every other truck he stopped that had either a typewritten or a computer generated bill of lading.

- Blocher called the State Police Post and requested a criminal history check on Quirk from his police radio. Trooper Denny came to the scene upon hearing the request from his own radio.

- Blocher issued Quirk a warning ticket and told him that he was free to leave. Quirk then drove to a rest area. After exiting the facilities, Quirk saw Trooper Denny waiting outside. Trooper Denny informed Quirk that a canine unit had been requested to sniff around Quirk's tractor and trailer.

- Quirk was informed that he was free to leave but that his tractor and trailer were going to be checked by the canine. Quirk gave his consent to defendants to search the trailer portion of the truck, and when this was done it confirmed the presence of lettuce. Quirk did not consent to the search of the cabin portion of the tractor. Quirk was informed that he was free to leave, but his truck would have to remain. He did not leave.

- Approximately 20 minutes later, Deputy Hunt arrived with his trained canine, Arco. Deputy Hunt led Arco around the outside of the tractor, and Arco alerted to a particular area of the tractor on each of three occasions when he was walked around the vehicle. Police entered the cabin of the tractor, where they found narcotics. Quirk was arrested.

Quirk was charged with dealing in Cocaine as a Class A felony and possession of cocaine as a Class C felony. He was confined in the Hancock County Jail while these charges were pending. Before trial, Quirk timely moved to suppress the cocaine, and the motion was granted. The trial court concluded that the officers' reasoning did not amount to a reasonable suspicion of criminal activity. Quirk's motion to suppress was therefore granted. The Indiana Court of Appeals allowed the State's interlocutory appeal and reversed the trial court's holding, but the Indiana Supreme Court affirmed the trial court's decision. *State v. Quirk,* 842 N.E.2d 334 (Ind. 2006).

## Discussion

*The Detention.* The Fourth Amendment provides: "The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated." The defendants argue that they are entitled to qualified immunity as to Quirk's claim that he was detained in violation of his federal rights until the police canine arrived at the scene.

In order to determine if a defendant is entitled to qualified immunity, the court must determine whether undisputed facts demonstrate that the defendant violated the plaintiff's constitutional rights. *Saucier v. Katz,* 533 U.S. 194, 201 (2001)("A court required to rule upon the qualified immunity issue must consider . . . this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry."). If a constitutional right was violated, the court must then ask whether the constitutional right was clearly established at the time the plaintiff was allegedly injured. *Id.* "The relevant inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation the officer confronted." *Payne v. Pauley,* 337 F.3d 767, 775-76 (7th Cir. 2003) (citing *Saucier,* 533 U.S. at 202). "A right is not clearly established if officers of reasonable competence could disagree on the issue." *Saffell v. Crews,* 183 F.3d 655, 658 (7th Cir. 1999) (quoting *Hinnen v. Kelly,* 992 F.2d 140, 142-43 (7th Cir. 1993)). In the context presented here, this mandate requires the court to determine whether reasonable police officers could have disagreed as to whether the facts, viewed in a light most favorable to Quirk, supported a reasonable suspicion of criminal conduct that justified prolonging the stop to permit a further investigation.

A canine sniff of the exterior of a car conducted during a traffic stop that is lawful at its inception and otherwise executed in a reasonable matter does not infringe upon a constitutionally protected interest in privacy. *United States v. Martin,* 411 F.3d 998, 1002 (8th Cir. 2005). Such a dog sniff may be the product of an unconstitutional seizure, however, if the traffic stop is unreasonably prolonged before the dog is employed. *Illinois v. Caballes,* 543 U.S. 405, 407 (2005); *Martin,* 411 F.3d at 1002. Once an officer has decided to permit a routine traffic offender to depart with a ticket, a warning, or an all clear, the Fourth Amendment applies to limit any subsequent detention or search. *United States v. $404,905.00 in U.S. Currency,* 182 F.3d 643, 648 (8th Cir. 1999). "[W]ith the purpose of the traffic stop completed, it would be an unreasonable extension of the scope of the investigation for [the trooper] to further detain [the suspect] or his vehicle, 'unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention.'" *United States v. Jones,* 269 F.3d 919, 925 (8th Cir. 2001)(quoting *United States v. Mesa,* 62 F.3d 159, 162 (6th Cir. 1995)).

As noted above, the Indiana Supreme Court agreed with the Hancock Circuit Court that calling Arco to the scene unreasonably prolonged Quirk's detention in relation to the protections of the Indiana Constitution. *Quirk v. State,* 842 N.E.2d at 339 ("We decline to address Quirk's federal constitutional argument and respond to his State claim only."). Even if this court agreed with that analysis in relation to the protections of the Fourth Amendment of the United States Constitution, however, the defendants would nonetheless be entitled to qualified immunity as to this claim because it would not have been evident to an

objectively reasonable officer in these circumstances that they lacked circumstances supplying reasonable suspicion of criminal conduct that justified prolonging the stop to permit a further investigation. *United States v. Muriel,* 418 F.3d 720, 726 (7th Cir. 2005). "Reasonable suspicion" means "some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Johnson,* 383 F.2d 538, 542 (7th Cir. 2004).

"'[R]easonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Illinois v. Wardlow,* 528 U.S. 119, 123-24 (2000). Whether an officer possesses "reasonable suspicion" is a fact-bound inquiry based upon the totality of the circumstances; even individual factors which might otherwise be consistent with innocent behavior can, when taken together, give rise to reasonable suspicion. *United States v. Arvizu,* 534 U.S. 266, 273 (2002).

> While "reasonable suspicion" is a hard term to define precisely, the Supreme Court has held that it is a commonsense, nontechnical concept that deals with the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act. But, even though "reasonable suspicion" is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop. In other words, reasonable suspicion is less than probable cause but more than a hunch. When determining whether an officer had reasonable suspicion, courts examine the totality of the circumstances known to the officer at the time of the stop, including the experience of the officer and the behavior and characteristics of the suspect. Further, we recognize that certain behavior in isolation may have an innocent explanation yet that same behavior may give rise to reasonable suspicion when viewed in the context of other factors at play.

*United States v. Lawshea,* 461 F.3d 857, 859 (7th Cir. 2006) (internal quotations and citations omitted). Information lawfully obtained during an initial traffic stop may cause the police officer to become reasonably suspicious of criminal conduct. This reasonable suspicion, in turn, may justify prolonging the traffic stop to permit additional reasonable investigation. *United States v. Martin,* 422 F.3d 597, 602 (7th Cir. 2005).

In this case, Troopers Blocher and Denny knew or learned that: (1) Quirk was nervous, and became more nervous when asked if he was transporting drugs; (2) Quirk made no eye contact and shifted in his seat; (3) Quirk was talkative; (4) Quirk had multiple aliases, which Blocher had never encountered before when running a check on a license; (5) Quirk's trip originated in a state that is a source location for narcotics; (6) Quirk's license was from a source state; (7) Quirk's bill of lading was handwritten, which was unusual to Blocher; (8) Quirk had a criminal history involving narcotics; (9) Quirk lied about his criminal history when asked about past arrests; and (10) Quirk made a statement regarding his semi being searched twice by U.S. Customs, which Denny thought was an attempt to "try and throw [them] off." Many of these same circumstances have been found by the courts to be relevant to a determination of whether "reasonable suspicion" for a further

4

investigation (the drug sniff in this case) exists. *Caballes,* moreover, was decided in January 2005, nearly four (4) years after Quirk's encounter with the defendants. The length of the time it took for Arco to arrive does not itself have any independent constitutional significance. For example, it was recognized in *United States v. Davis,* 430 F.3d 345, 355 (6th Cir. 2005), that "the use of a well-trained drug-sniffing dog that was brought to the scene within a reasonable period after the initial traffic stop was a permissible means of determining whether the police were correct to suspect that [the driver] was in possession of narcotics." *United States v. Sanchez,* 417 F.3d 971, 975 (8th Cir. 2005) ("A total duration of approximately forty-five minutes is certainly not unreasonable . . . .").

Officials acting under qualified immunity are not subjected to suit "unless their actions violate clearly established statutory or constitutional rights then known to a reasonable officer." *Ulichny v. Merton Cmty. School Dist.,* 249 F.3d 686, 706 (7th Cir. 2001). Accordingly, in order to overcome the defendants' motion for summary judgment on qualified immunity, Quirk must come forward with a closely analogous case demonstrating that a reasonable officer would have known that his actions violated the Constitution. *Siebert v. Severino,* 256 F.3d 648, 654-55 (7th Cir. 2001). If reasonable officials could disagree on the issue, a right is not clearly established. *Ulichny,* 249 F.3d at 706. Although the privilege of qualified immunity is a defense, the plaintiff carries the burden of defeating it. *Molina ex rel. Molina v. Cooper,* 325 F.3d 963, 968 (7th Cir. 2003). Quirk has not shown that, given the circumstances of his traffic stop and the information known to the defendants, the absence of a basis for reasonable suspicion for a further investigation was clearly established in March 2001. His failure to do so, together with the evident fact that a reasonable officer could have reached precisely the opposite conclusion, shows that the defendants are entitled to qualified immunity as to the claim that their detention of Quirk so that the police canine could arrive and a further investigation could be conducted. The defendants are thus entitled to summary judgment in their favor as to this first claim.

*The Prosecution.* After Quirk was arrested, criminal charges were filed against him by the State of Indiana. This occurred in the Hancock Circuit Court and occurred through the action of the Hancock County Prosecuting Attorney. Quirk seeks damages from Blocher and Denny. This is not, because it cannot be, a claim for malicious prosecution, for "'[m]alicious prosecution' is not a constitutional tort independent of complaints about wrongful arrest and detention, and Erik Redwood was never placed in custody." *Redwood v. Dodson,* 476 F.3d 462, 466 (7th Cir. 2006)(citing cases).

The decision to charge Quirk was not that of Blocher and Denny. The decision-maker was not sued in this case, nor would such a claim be viable in light of the absolute immunity accorded prosecutors in initiating a prosecution. *Imbler v. Pachtman,* 424 U.S. 409, 427 (1976). The very narrow circumstances under which defendants Blocher and Denny could be implicated in that charging decision exist where "the officers committed some improper act after they arrested [the defendant] without probable cause, for example, that they pressured or influenced the prosecutors to indict, made knowing misstatements to the prosecutor, testified untruthfully, or covered up exculpatory evidence." *Snodderly v. R.U.F.F. Drug Enforcement Task Force,* 239 F.3d 892, 901 (7th Cir. 2001). Those circumstances are not present here, and Blocher and Denny are not liable for Quirk's detention prior to the disposition of the criminal charges filed against him by the State of Indiana.

*State Law Claim.* Quirk asserts a claim directly under the Indiana Constitution. The retention of jurisdiction over the pendent state law claims is permissible under 28 U.S.C. § 1367(a). The retention of such jurisdiction is appropriate in this case. *Lawrence v. Kenosha County,* 391 F.3d 837, 844 (7th Cir. 2004).

The Indiana Supreme Court recently had the occasion to weigh in on whether the Indiana Constitution supports an independent claim for relief. It declined to do so based on any of the circumstances present in Quirk's case. *See Cantrell v. Morris,* 849 N.E.2d 488, 500-01 (Ind. 2006). The supplemental claim under Indiana state law therefore fails to support recovery, despite Quirk's success as to the suppression question in both the trial court and the Indiana Supreme Court.

## Conclusion

Quirk has not identified a genuine issue of material fact as to his claims. *Liberles v. County of Cook,* 709 F.3d 1122, 1126 (7th Cir. 1983) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered."). The motion for summary judgment discussed in this Entry is therefore **granted.** This resolution includes the claim under Indiana state law. Judgment consistent with this Entry and with the Entry addressing the claims against defendant Hunt shall now issue.

**IT IS SO ORDERED.**

_____
John Daniel Tinder, Judge
United States District Court

Date: 03/19/2007